# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

| | |
|---|---|
| In Re | |
| JACK O. LOADER, | **Bankruptcy Case No. 08-00387-JDP** |
| **Debtor.** | |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

 Jeremy J. Gugino, Boise, Idaho, Chapter 7 Trustee.

 Jon M. Steele, RUNFT & STEELE, Boise, Idaho, Attorney for Creditor Lori Woods.

### *Introduction*

This contest presents an apparent issue of first impression.

Creditor Lori Wood ("Wood") asserts that her claim against chapter

7[1] debtor Jack Loader ("Debtor") for $223,209.68 should be accorded

---

 [1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

priority for purposes of payment in this case pursuant to § 507(a)(10).  The

trustee, Jeremy J. Gugino ("Trustee"), objects to allowance of Wood's

priority claim; he asserts it should be allowed as a general, unsecured

claim.  Docket No. 33.  After a hearing concerning Trustee's objection, at

which the parties presented documentary evidence and legal argument,

the Court took the issues under advisement for decision.[2]  Having now

reviewed the record, the arguments of the parties, and the applicable law,

the Court concludes that Wood's claim is indeed entitled to priority.[3]

### *Facts*

This dispute has its roots in a volatile combination of alcohol with a

---

[2] Counsel for Debtor also appeared at the hearing.  While the debtor
frequently does not care how claims are to be paid in a bankruptcy case, counsel
explained that he was concerned with the Court's resolution of this issue because
its decision may have preclusive effects in an adversary proceeding commenced
by Wood against Debtor regarding the dischargeability of her claim.  Adv.
Proceeding No. 09-06004-JDP.  Reacting to Debtor's counsel's concerns, Wood's
attorney acknowledged that the legal issue presented by Trustee's objection to
Wood's claim involved only the alleged priority of that claim for distribution
purposes, and not its dischargeability.  Apparently comfortable with that
response, Debtor's lawyer was excused and offered no evidence or legal
argument.

[3] This Memorandum sets forth the Court's findings of fact, conclusions of
law and reasons for its decision.  Rules 7052, 9014.

MEMORANDUM OF DECISION - 2

motor vehicle.  The material facts are largely undisputed.

On July 24, 2004, Debtor and Al Ojeda ("Ojeda") were visiting Debtor's son, who lived next door to the apartment complex where Wood resides.  When they left, Debtor and Ojeda got into Debtor's truck.  Ojeda, who had not been drinking that day, was in the driver's seat.  Debtor, who was intoxicated, sat in the passenger's seat.  Wood and several others were standing near the parking lot at the time.

To exit the parking lot, Ojeda attempted to drive the truck over a very large log pole which was being used as a parking barricade in the parking lot in front of Wood's apartment complex.  He approached the log slowly, but the tires of the pickup lost traction and began to spin on the gravel parking surface.  Ojeda backed the truck up a short distance from the log, apparently, to ponder his course of action.

From the passenger seat, Debtor at once reached down and shifted the truck into four-wheel drive while at the same time proclaiming to Ojeda:  "F*** this, go ahead and go over it."  Ex. 5, p. 5.  Acting on this advice, Ojeda accelerated the truck in a second attempt to get the vehicle

MEMORANDUM OF DECISION - 3

over the log.  This time, though, the wheels of the pickup struck the log,

dislodged it from the ground, and caused it to strike Wood, who was

standing nearby, in the leg.  Wood was seriously injured.  She was

transported to the hospital by ambulance, and underwent immediate

surgery on her ankle.  She spent several days in the hospital recovering.

Wood later sued Debtor and Ojeda in state court for damages

resulting from her injuries.  On January 24, 2008, after a four-day trial, the

jury rendered its verdict.  Responding to the questions on the special

verdict form, the jury found both Ojeda and Wood to be negligent in

causing Wood's injuries, apportioning 95% of the fault to Ojeda, and 5% to

Wood.  Ex. 20.  The jury fixed Wood's economic and non-economic

damage at $34,000 and $170,000, respectively.  *Id.*  In addition, the jury

found the conduct of Debtor and Ojeda to be "outrageous" and, of critical

importance here, that Debtor and Ojeda were "acting in concert" in

causing the accident.  The jury awarded Wood punitive damages of

$50,000 against Debtor, and $180,000 against Ojeda.  *Id.*

Shortly after the jury verdict was rendered, on March 5, 2008, Debtor

MEMORANDUM OF DECISION - 4

filed the chapter 7 bankruptcy petition commencing this case.  Docket No.

1.  Debtor filed a creditor's mailing matrix with the petition which listed

ten creditors, but did not include Wood.  Debtor later filed  schedules and

a Statement of Financial Affairs.  In his Statement of Financial Affairs,

Debtor identified the pending state court suit, *Wood v. Loader*, CV PI

06012190.  *See* Docket No. 15.  Debtor also listed a claim for  "L Wood" in

his schedule F of unsecured creditors, indicating that the claim was for

$400,000, and was contingent, unliquidated, and disputed.  *Id.*  However,

Debtor did not amend the creditor mailing matrix to add Wood.

On May 14, 2008, Trustee notified the Court that it appeared there

would be assets available to distribute to creditors, and in response, the

Clerk issued a notice to creditors of the need to file proofs of claim in order

to share in any distribution.  Docket No. 18.  According to that notice,

claims were due within ninety days, *i.e.*, by August 12, 2008.  The BNC

certificate of service attached to the notice reveals that this notice was sent

to all creditors listed on the mailing matrix filed with Debtor's original

petition.  Docket No. 19.  Wood, who is not listed on the certificate of

MEMORANDUM OF DECISION - 5

service, apparently did not receive it.[4]  *Id*.  On June 18, 2008 Debtor

received a discharge.

Approximately one month later, on July 22, 2008, during the

pendency of the bankruptcy case, the district judge issued a memorandum

of decision and order in the state court action resolving several issues

pertaining to attorney's fees, interest, and Debtor and Ojeda's personal

liability to Wood.  Ex. 19.  Then, on December 18, 2008, a formal judgment

was entered by the state court against Debtor and Ojeda.  Ex. 21.  In it,

Debtor and Ojeda were adjudged jointly and severally liable to Wood in

the amount of $167,784.48, and individually liable to Wood for $55,425.20

and $199,529.40, respectively.  *Id*.  On January 13, 2009, Wood filed a proof

of claim in this case, asserting a claim against Debtor for $223,209.68 that

was entitled to priority under § 507(a)(10).

Trustee objected to the priority treatment of Wood's claim on

---

[4] The creditor mailing matrix currently on file with the Court includes
Wood as one of the creditors, but it is unclear exactly when, or at whose request,
her name was added.  The Court speculates Wood's name was added by the
Clerk as a result of her filing the proof of claim.

MEMORANDUM OF DECISION - 6

February 22, 2009. Docket No. 33. At the hearing on this objection,

Trustee reported that he was holding $3,880.14 which would be available

to satisfy the claims of creditors. Trustee also reported that, in addition to

Wood's claim, only two other proofs of claim had been filed, and only one

of those was timely.[5]

### *Discussion*

### I.

Section 507(a)(10), the statute upon which Wood relies for her claim

for priority, was added to the Bankruptcy Code as part of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[6] It

accords a tenth-level priority to:

> [A]llowed claims for death or personal injury
> resulting from the operation of a motor vehicle or
> vessel if such operation was unlawful because the
> debtor was intoxicated from using alcohol, a
> drug, or another substance.

---

[5] Intermountain Hospital filed an unsecured claim for $521.58 on June 2, 2008; Gilman Orthodontics filed an unsecured claim for $598.03 on January 2, 2009. Claims Register, Claims 1 - 2.

[6] Pub.L. No. 109-8.

MEMORANDUM OF DECISION - 7

11 U.S.C. § 507(a)(10).

Since this is a relatively new Code provision, it was not surprising

that neither the parties nor the Court were able to locate any published

decisions interpreting § 507(a)(10).  In addition, legislative history

concerning this new priority provision is nearly non-existent.  What little

history there is indicates, merely, that "[BAPCPA] amends section 507(a) of

the Bankruptcy Code to accord a tenth-level priority to claims for death or

personal injuries resulting from the debtor's operation of a motor vehicle

or vessel while intoxicated."  H.R. Rep. No. 31, 109th Cong., 1st Sess. 223

(2005). [7]

Obviously, the monetary stakes in this case are modest.[8]  Even so, if

---

[7]  The language of § 507(a)(10) is similar to that of another, pre-BAPCPA
Code provision.  Section 523(a)(9) excepts from discharge in bankruptcy any debt
"for death or personal injury caused by the debtor's operation of a motor vehicle,
vessel, or aircraft if such operation was unlawful because the debtor was
intoxicated from using alcohol, a drug, or another substance."  Unfortunately,
there is also no helpful legislative history nor pertinent case law construing
§ 523(a)(9) to assist the Court in deciding the precise issues here.

[8]  Under § 704(a)(5), "[t]he trustee shall . . . (5) if a purpose would be
served, examine proofs of claim and object to the allowance of any claim that is
improper[.]"  Because of the variation in the distribution to creditors depending
upon the outcome of Wood's claim to priority, while the amounts involved are

MEMORANDUM OF DECISION - 8

Wood's claim is preferred, she would receive all of the money to be

distributed by Trustee to creditors from the estate; other creditors would

receive nothing.  On the other hand, if Wood's claim is not entitled to

priority, then the unsecured creditors would share in any distributions.  *See*

§ 726(a)(1) and (2) (providing, generally, that allowed priority claims are

paid before distributions are made to non-priority unsecured claims).

Wood has the burden of proving, by a preponderance of the evidence, that

her claim is entitled to priority.  *In re Prickett*, 00.3 I.B.C.R. 152, 152 (Bankr.

D. Idaho 2000) (citing *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)).

II.

In parsing the language of § 507(a)(10), to warrant priority, a

claimant must show that (1) it holds an allowed claim, (2) for damages for

death or personal injury, (3) resulting from the operation of a motor vehicle

or vessel, and (4) that such operation was unlawful because the debtor was

intoxicated.

To be clear, Trustee does not contest *allowance* of Wood's claim – he

---

small, Trustee was duty-bound to object to Wood's claim.

MEMORANDUM OF DECISION - 9

objects only to it being treated as a priority claim.  Indeed, Trustee

concedes that the first three elements for priority treatment under

§ 507(a)(10) outlined above are satisfied in this case.  In addition, Trustee

does not dispute that Debtor was intoxicated at the time of this incident.

Trustee opposes allowing Wood's claim priority solely because, he

contends, Debtor's conduct did not amount to the unlawful operation of

the motor vehicle.

## A.

At the hearing, counsel for Wood suggested that the "unlawfulness"

required by § 507(a)(10) could result from conduct separate and apart from

operation of a vehicle while intoxicated.  In this vein, counsel suggested

that even though Debtor was never charged with a crime,[9] his conduct in

this instance would have qualified as criminal under several statutes,

---

[9]  This Court has previously held that an actual criminal conviction is not
required as a condition for a determination that a debt is excepted from
discharge under § 523(a)(9).  *United Servs. Automobile Assn. v. Pair (In re Pair)*, 264
B.R. 680, 684 (Bankr. D. Idaho 2001).  The same reasoning confirms that,
assuming the other elements are satisfied, a debtor need not suffer a criminal
conviction in order for a claimant to receive priority for an injury claim under
§ 507(a)(10).

MEMORANDUM OF DECISION - 10

including assault, battery, and reckless driving.[10]

The Court respectfully disagrees with Wood's attorney on this point.

Considering the language of § 507(a)(10) as a whole, the term "unlawful"

cannot be viewed in isolation; it is married to both the operation of the

vehicle, and the debtor's state of intoxication.  In the Court's view,

---

[10]   Idaho Code § 18-901 defines an assault as:
(a) An unlawful attempt, coupled with apparent ability, to commit
a violent injury on the person of another; or
(b) An intentional, unlawful threat by word or act to do violence to
the person of another, coupled with an apparent ability to do so,
and doing some act which creates a well-founded fear in such other
person that such violence is imminent.

Idaho Code § 18-903 defines a battery as:
(a) Willful and unlawful use of force or violence upon the person of
another; or
(b) Actual, intentional and unlawful touching or striking of another
person against the will of the other; or
(c) Unlawfully and intentionally causing bodily harm to an
individual.

And finally, Idaho code § 49-1401(1) provides:
Any person who drives or is in actual physical control of any
vehicle upon a highway, or upon public or private property open to
public use, carelessly and heedlessly or without due caution and
circumspection, and at a speed or in a manner as to endanger or be
likely to endanger any person or property . . . shall be guilty of
reckless driving[.]

MEMORANDUM OF DECISION - 11

§ 507(a)(10) does not simply require that debtor be engaged in some sort of

unlawful conduct while intoxicated.  The Code instead requires that the

debtor's operation of the motor vehicle be unlawful *because* the debtor was

intoxicated.  Because intoxication is not a separate element in any of the

crimes identified by counsel for Wood, whether Debtor's conduct may

have qualified as criminal under those statutes is of no moment.

**B.**

At bottom, the Court must determine whether Debtor's conduct in

this case amounts to the unlawful operation of a motor vehicle.  To do so

the Court looks to state law.  *In re Pair*, 264 B.R. at 684.  In Idaho, "[i]t is

unlawful for any person who is under the influence of alcohol . . . *to drive or*

*be in actual physical control* of a motor vehicle . . . ."  Idaho Code § 18-

8004(1)(a) (emphasis added).  To be in "actual physical control" of a

vehicle, the actor must be "in the driver's position of the motor vehicle

with the motor running or with the motor vehicle moving."  Idaho Code

§ 18-8004(5).

Debtor was not "driving" the pickup in this case.  Moreover, Trustee

MEMORANDUM OF DECISION - 12

points out that Debtor was seated in the passenger seat, never having occupied the driver's seat of the vehicle. He argues that, while Debtor was intoxicated, he was never in "actual physical control" of the vehicle as that term is defined by Idaho Code § 18-8004(5). Therefore, Trustee contends, Debtor did not, per state law, operate the motor vehicle unlawfully. Trustee cites *State v. Adams*, 127 P.3d 208 (Id. Ct. App. 2005) to support his point that the actor's position in the driver's seat is critical.

But, upon close reading, *Adams* is of little help to Trustee. In that case, it was undisputed that the defendant was sitting in the driver's seat of a car with the motor running. However, the court's decision did not hinge on the defendant's location within the vehicle, but rather on whether the vehicle was capable of moving or being controlled. It seems the vehicle was inoperable due to a problem with the transmission. Because of this fact, the court held "[i]f a vehicle cannot be moved it is not a motor vehicle capable of being 'controlled,'" and consequently, "the statute is not violated when the vehicle is not in motion or susceptible of easily being placed in motion." *Id*. at 211.

MEMORANDUM OF DECISION - 13

The facts here are much different than in *Adams*.  It is undisputed that the truck was operable, and in fact "moved."

At the hearing, the Court asked Trustee whether Debtor's act of shifting the truck into four-wheel drive constituted a manifestation of control over the vehicle.  Trustee responded that Debtor's conduct did not amount to control, under state law, because he was not sitting in the driver's seat of the truck at the time he took these acts.  In addition, in response to the question whether, under § 507(a)(10), it was possible for there to be multiple operators of a motor vehicle, Trustee disagreed because, under his interpretation, Idaho Code § 18-8004(5) requires the actor to occupy the driver's seat to constitute the unlawful operation of a vehicle.

The state courts have indicated that an actor's location within the vehicle is not the sole consideration in determining whether he or she is in control of a vehicle.  For example, in *State v. Cheney*, 782 P.2d 40 (Id. Ct. App. 1989), the Idaho Court of Appeals noted that the term "actual physical control" as used in the Idaho DUI  statute (and in Idaho's implied

MEMORANDUM OF DECISION - 14

consent statute[11]) has an "expansive definition." *Id.* at 43.  The court

observed that:

> the purpose of [the DUI statute] is not only to
> deter individuals who have been drinking from
> actually driving their vehicles, but also to deter
> them from exercising *any* control over their
> vehicles while in an intoxicated state.

*Id*. (citing *State v. Ghylin*, 250 N.W.2d 252 (N.D. 1977) (emphasis in

original).  In that decision, the court noted that other states with similar

laws generally prohibit a wide variety of activity associated with operating

a motor vehicle by intoxicated persons, "including acts in which the

vehicle being driven was not moving."  *See* Annot., *Operating Motor Vehicle*

*While Intoxicated*, 93 A.L.R.3d 7, § 3(c) (1979).

In summary, while Trustee suggests that only an intoxicated driver

of a vehicle can be guilty of its unlawful operation, the case law is not that

clear.

## C.

Did Debtor, because he was intoxicated, unlawfully operate a motor

---

[11] *See* Idaho Code § 18-8002.

MEMORANDUM OF DECISION - 15

vehicle resulting in Wood's injuries?

Debtor and Ojeda were both sitting inside of Debtor's truck, with the vehicle's engine running. The truck was clearly capable of moving, and indeed, Debtor and Ojeda caused it to move. In this regard, the Court must respect the finding of the state court jury that Debtor and Ojeda were acting "in concert." Ex. 20.

Ojeda had failed in the first attempt to overcome the log. Debtor, apparently frustrated with the effort, instructed Ojeda to, "go ahead and go over it." Debtor, at the same time, seized a lever on the floor of the truck and engaged the vehicle's four-wheel drive, obviously intending to enable the truck to climb over the log. Although the vehicle was stationary at the time these events occurred, in the Court's opinion, Debtor's actions affected the mechanical functioning of the truck and rendered it "susceptible of easily being placed in motion." *Adams*, 127 P.3d at 211.

To be precise, Debtor's verbal encouragement of Ojeda, standing alone, would be insufficient to amount to actual physical control over the truck. And there is no doubt that Ojeda was also operating the vehicle

MEMORANDUM OF DECISION - 16

because he controlled the accelerator pedal and steering wheel.  However, that Ojeda's acts, at least in part, caused the truck to lurch into the log pole does not mean that Debtor's actions were insignificant.  As the jury found, it was the concerted acts of Ojeda and Debtor that caused the truck to hit the log, and the log to strike Wood.  Debtor's comments in tandem with his act of shifting the vehicle into four-wheel drive certainly manifested his intent to exercise some control over the vehicle.  That he was in the passenger seat at the time he engaged the truck's controls does not change the result – Debtor manipulated the vehicle with the intent to enable it to jump the log.

Accordingly, the Court concludes that because Debtor's actions, when combined with those of Ojeda, caused the truck to move as it did, Debtor was exercising sufficient actual, physical control of the motor vehicle.  Because he was intoxicated, Debtor's conduct violated Idaho Code § 18-8004(1)(a) and was unlawful.

### *Conclusion*

For these reasons, Trustee's objection to the priority of Wood's claim

MEMORANDUM OF DECISION - 17

will be overruled, and the claim will be allowed as a priority claim under

§ 507(a)(10).  A separate order will be entered.

Dated:  June 4, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 18